United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Seminole Masonry, LLC, Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| James H. Hodges and others, ) | |
| Defendants. ) | |
| ) | |
| Haven Holdings of Central Florida, ) | Civil Action No. 18-60368-Civ-Scola |
| LLC, and others, Counter-Plaintiffs ) | |
| ) | |
| v. ) | |
| ) | |
| Seminole Masonry, LLC, and others, ) | |
| Counter-Defendants. ) | |

## Opinion Order on Motions to Dismiss

This matter is before the Court on three motions to dismiss filed by Counter-Defendants Seminole Masonry, LLC ("Seminole Masonry") (ECF No. 52), Quantum Construction, LLC and Quantum Ventures of Michigan, LLC (collectively, "Quantum") (ECF No. 68), and Dean Locke ("Locke") (ECF No. 69). The Court has reviewed the motions, all supporting and opposing materials, the record in this case and the applicable law, and is otherwise fully advised. For the reasons set forth below, the Court **grants** all three motions (**ECF Nos. 52, 68, 69**), as follows.

1. **Factual Background**

This case arises in the context of the sale of a business. Seminole Masonry, the buyer, and the Defendants, who include the seller (Haven Holdings of Central Florida, LLC, "Haven") and owners and other key persons related to the business (collectively, "Hodges"), entered an Asset Purchase Agreement ("APA") with respect to the sale of certain assets of a masonry business located in Sanford, Florida. In connection with the sale, the Defendants made certain representations and warranties regarding various aspects of the masonry business, and the APA contains a mutual indemnification provision requiring payment by one party to the other if losses occur because of the breach or failure of any covenant or agreement made in

the APA.

Two other contracts are relevant to the motions. First, by separate transaction, Seminole Masonry agreed to lease certain real property (the "Subject Property") in Sanford, Florida (the "Lease Agreement," ECF No. 41-4). Seminole Land Management, LLC ("SLM") was the lessor under the Lease Agreement.

The second contract was an employment agreement between defendant James H. Hodges ("James") and Seminole Masonry. (the "Employment Agreement," ECF No. 41-6.) James was the former principal of Seminole Masonry, and the Employment Agreement generally extended his employment with the company for three-months post-closing on the APA.

## 2. Procedural History

Seminole Masonry brought this suit seeking recovery for losses arising from the Defendants' alleged breaches of warranties made in the APA, and pursuant to which the Plaintiff made a demand for indemnification with which the Defendants did not comply. (ECF No. 1.) In addition, the Plaintiff alleges that the Defendants concealed material information in connection with the sale. As a result, the Plaintiff asserts numerous claims for breach of the APA (Counts 1-12) and a claim for fraud in the inducement (Count 13). The Defendants sought dismissal of all claims, and the Court denied that motion. (ECF No. 37.)

Then, the Defendants and SLM (collectively, the "Counter-Plaintiffs") answered the Complaint and filed fifteen counterclaims and third-party claims against Seminole Masonry and third-parties Quantum, Locke and Bright House Networks, LLC ("Bright House"). (ECF No. 41.) The Quantum entities are parent companies of Seminole Masonry. Locke is the CEO and president of Seminole Masonry. Bright House is a contractor employed by Seminole Masonry to make certain alterations to the Subject Property. Bright House answered the single trespass claim asserted against it. (ECF No. 67.) Quantum, Locke and Seminole Masonry separately moved to dismiss. (ECF Nos. 52, 68, 69.) A summary of those motions follows.

### A. Quantum

Quantum is not a named defendant to any of the counterclaims but is nonetheless a named party to this suit. Through its motion, Quantum argues: (1) that it lacks fair notice of the claims asserted against it (ECF No. 68 at pp. 7-8); and (2) to the extent that Counts I and XIV are asserted against Quantum, those counts should be dismissed as Quantum was not a party to the APA and those counts otherwise fail to state claims for relief against

Quantum (*id.* at pp. 9-13).

   **B. Locke**

Three claims are asserted against Locke as president and CEO of Seminole Masonry: fraud in the inducement for the APA (Count V, ECF No. 41 at pp. 35-37); tortious interference with a business relationship (Count IX, *id.* at p. 41); and violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count XI, *id.* at pp. 43-44). The Counter-Plaintiffs voluntarily dismissed without prejudice Count XI. (ECF No. 62.)

Locke moves to dismiss Counts V and IX, arguing: (1) that the APA expressly contradicts Locke's alleged misrepresentations and therefore cannot support a claim for fraudulent inducement (ECF No. 69 at pp. 7-11); (2) that the APA's merger clause precludes the Counter-Plaintiffs from asserting Count V based on precontractual representations (*id.* at pp. 11-13); (3) that Locke's opinions are not actionable in a claim for fraudulent inducement (*id.* at pp. 13-14); (4) that Count V fails Rule 9(b)'s heightened pleading standard for claims sounding in fraud (*id.* at pp. 15-16); (5) that Locke could not have tortuously interfered with a contract to which he was a party, requiring dismissal of Count IX (*id.* at pp. 16-18); and (6) that, in the alternative, the request for attorneys' fees under Counts V and IX should be stricken (*id.* at p. 18).

   **C. Seminole Masonry**

The following counterclaims are asserted against Seminole Masonry: (1) breach of the APA (Count I, ECF No. 41 at p. 28); unjust enrichment (Count II, *id.* at p. 30); violations of FDUTPA (Counts III and X, *id.* at pp. 32, 42); injunctive relief (Count IV, *id.* at p. 33); breach of the Lease Agreement (Count VIII, *id.* at p. 39); and breach of Employment Agreement (Count XIII, *id.* at p. 46).

Seminole Masonry moved to dismiss Counts I, III, IV, X, XIV and XV. (ECF No. 52.) Thereafter, Havens voluntarily dismissed Counts III and X without prejudice, mooting all arguments directed at those claims. (ECF No. 59.) Thus, Seminole Masonry's remaining arguments for dismissal are: (1) counter-plaintiff SLM lacks standing to assert Counts I, XIV and XV (ECF No. 52 at pp. 6-7); and (2) Count IV, the stand-alone claim for injunctive relief, is insufficiently pled (*id.* at pp. 16-17).

**3.   Motion to Dismiss Standard**

When considering a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all the complaint's allegations as true, construing them in the light most favorable to

the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-has-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When considering a motion to dismiss, in addition to the allegations in the complaint, the district court also considers "the facts derived from a complaint's exhibits as part of the plaintiff's basic factual averments," and where those exhibits contradict the complaint's allegations, the exhibits control. *F.T.C. v. AbbVie Prods. LLC*, 713 F.3d 54, 63 (11th Cir. 2013); *see also Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1205 (11th Cir. 2007) ("when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern.").

## 4. Analysis

The Court will separately analyze the arguments for dismissal raised by each party.

### A. Quantum

Although it is unclear from the counterclaim, in opposition to Quantum's motion, the Counter-Plaintiffs identify two counts that are asserted against Quantum: Count XIV for rescission of the APA and Count XV for reformation of the APA. Quantum argues that both claims should be dismissed because it was not a party to the APA. The Court agrees.

#### i. Rescission

The "first requirement of a suit for rescission under Florida law" is that the "parties to the lawsuit lie in contractual privity." *Thompkins v. Lil' Joe Records, Inc.*, 476 F.3d 1294, 1315 (11th Cir. 2007). "Privity of contract is that connection or relationship which exists between two or more contracting parties." *Bland v. Freightliner LLC*, 206 F. Supp. 2d 1202, 1207 (M.D. Fla. 2002). "A plaintiff cannot bring a rescission claim against someone not a party to the contract." *Crystal Entm't & Filmworks, Inc. v. Jurado*, No. 08-60125, 2009 WL 1098463, at *3 (S.D. Fla. Apr. 22, 2009) (Cooke, J.).

Count XIV "is an action for rescission of the APA." (ECF No. 41 at ¶ 165.) Quantum is not a party to the APA, meaning Quantum and the Counter-Plaintiffs do not "lie in contractual privity." *Thompkins*, 476 F.3d at 1315; (ECF

No. 41-1 (APA, filed as an attachment to the counterclaim).) Thus, the "first requirement of a suit for rescission under Florida law" is not met. *Thompkins*, 476 F.3d at 1315. No amended pleading can change that fact and Count XIV is therefore **dismissed with prejudice** as to Quantum only.

### ii. Reformation

The reformation claim is dismissed against Quantum for a similar reason. "To state a cause of action for reformation under Florida law, the complaint must allege that a contract fails to express the agreement of the parties as a result of (1) a mutual mistake or (2) a unilateral mistake by one party coupled with the inequitable conduct of the other party." *Barber v. Am.'s Wholesale Lender,* 542 F. App'x 832, 838 (11th Cir. 2013) (citing *Romo v. Amedex Ins. Co.*, 930 So. 2d 643, 649 (Fla. 3d DCA 2006)).

Neither party identified any authority to support a claim for reformation against a non-party to the subject contract. And the Court is at a loss for how a judgment for the Counter-Plaintiffs against Quantum for reformation of the APA would provide meaningful relief, where Quantum is neither party to nor bound by that agreement. Put differently, a judgment against Quantum on the reformation claim would not redress any injury to the Counter-Plaintiffs. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102-04 (1998) (to satisfy Article III's standing requirement, "there must be redressability—a likelihood that the requested relief will redress the alleged injury"). As a result, the Counter-Plaintiffs lack Article III standing to pursue reformation of the APA against Quantum, and the Court **dismisses** Count XV **without prejudice** as to Quantum only. *DiMaio v. Democratic Nat. Committee*, 520 F.3d 1299, 1303 (11th Cir. 2008) (noting that dismissal without prejudice is required if the dismissal is on standing grounds).

## B. Locke

In his motion, Locke argues that both Count V for fraudulent inducement and Count IX for tortious interference should be dismissed with prejudice. The Court will address each argument in turn.

### i. Fraudulent Inducement

The fraudulent inducement claim is premised on Locke's alleged (1) false assurances to Hodges "that the disputes the two sides had experienced would not continue after closing" on the APA, (2) misrepresentations about the structure of the APA transaction, and (3) false promises to James of "employment after the close of the transaction." (ECF No. 41 at ¶¶ 105-09.) Essentially, the Counter-Plaintiffs' fraud theory is that various pre-contractual

statements by Locke, later incorporated into the APA and Employment Agreement, were misrepresentations because Locke ultimately failed to perform as those contracts required.

Locke seeks dismissal of Count V, arguing that each of the purported misrepresentations are expressly contradicted by the terms of the APA and Employment Agreement and, thus, not actionable under Florida law. (ECF No. 69 at pp. 7-11.) In response, the Counter-Plaintiffs agree that the subject representations were "included" and "contained" within the APA and Employment Agreement. (*See* ECF No. 74 at pp. 8-10). But the Counter-Plaintiffs argue that that fact is immaterial, and those representations were fraudulent because Locke allegedly failed to uphold his end of the bargains. (*Id.*) In reply, Locke argues that the appropriate form of relief for the allegations of Count V is a claim for breach of contract, not fraudulent inducement. (ECF No. 78 at p. 4.) The Court agrees with Locke.

"It is well settled in Florida that, where alleged misrepresentations relate to matters already covered in a written contract, such representations are not actionable in fraud." *Peebles v. Puig*, 223 So. 3d 1065, 1068 (Fla. 3d DCA 2017) (citing *La Pesca Grande Charters, Inc. v. Moran*, 704 So. 2d 710, 712–13 (Fla. 5th DCA 1998) (explaining the difference between fraud in the inducement and fraud in the performance, the latter not constituting a separate cause of action from that of a concurrent breach of contract action)). This "legal principle[ is] rooted in the notion that, when a contract is breached, the parameters of a plaintiff's claim are defined by contract law, rather than by tort law." *Id.*

Cutting through the obfuscation, the Counter-Plaintiffs' arguments in opposition establish precisely why Count V fails to state a claim. The Counter-Plaintiffs concede that each of the alleged misrepresentations by Locke are "included" and "contained" in the APA and Employment Agreement. (ECF No. 74 at p. 8 (arguing that Locke's "misrepresentations regarding the APA were include within the writing"), p. 9 ("Locke's misrepresentations appear within the APA documents"), p. 10 ("[l]ike the other misrepresentations," the employment representations were also "contained in a subsequent writing" (*i.e.* the Employment Agreement).). But those "representations" are not facts and, indeed, are only "misrepresentations" because of Locke's allegedly deficient performance under the APA and Employment Agreement. (*See id.* at p. 8-11 (arguing that various breaches of the APA and Employment agreement rendered contrary pre-contractual statements misrepresentations).) Thus, Count V is an improper claim of fraud in the *performance*—not the *inducement*—of those agreements. *See La Pesca Grande Charters*, 704 So. 2d at 712-14 ("If there is no fraud inducing someone to enter into a contract, but the contract is breached, the cause of action sounds in contract."). And because a

"mere promise not performed" cannot "form the predicate for actionable fraud," *Biscayne Inv. Grp.*, 903 So. 2d at 255, Count V fails to state a claim and is **dismissed with prejudice**.

### ii. Tortious Interference

In Count IX, SLM asserts a counterclaim against Locke, individually, for tortious interference with a business relationship. (ECF No. 41 at p. 41.) This claim arises out of an alleged breach of the Lease Agreement, through which SLM agreed to lease the Subject Property to Seminole Masonry. (*Id.*) SLM claims Locke, who is Seminole Masonry's president and CEO, intentionally and tortuously interfered with the Lease Agreement by permitting structural alterations to the Subject Property over SLM's objection. (*Id.*)

Locke moves to dismiss this count, arguing a cause of action for tortious interference cannot lie "against one who is party to the contractual relationship upon which the claim is based." (ECF No. 69 at pp. 16-18.) And because this rule extends to employees of Seminole Masonry, like Locke, Count IX fails to state a claim and requires dismissal. (*Id.*) In opposition, SLM argues that Locke's actions were made with ulterior motives and not in the best interest of Seminole Masonry, and therefore may support a claim for tortious interference under Florida law. (ECF No. 74 at pp. 17-18.)

"The elements of tortious interference with a business relationship are '(1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendants; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship.'" *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814 (Fla. 1994) (alterations omitted; quoting *Tamiami Trail Tours, Inc. v. Cotton*, 463 So. 2d 1126, 1127 (Fla. 1985)).

In such a claim, the "interfering defendant must be a third party, a stranger to the business relationship." *Ernie Haire Ford, Inc. v. Ford Motor Co.*, 260 F.3d 1285, 1294 (11th Cir. 2001) (quoting *Salit v. Ruden, McClosky, Smith, Schuster & Russell, P.A.*, 742 So.2d 381, 386 (Fla. 4th DCA 1999)). So "a claim for tortious interference with contract cannot lie where the alleged interference is directed at a business relationship to which the defendant is a party." *Id.* (citing *Genet Co. v. Anheuser–Busch, Inc.*, 498 So. 2d 683, 684 (Fla. 3d DCA 1986); *Ethyl v. Balter*, 386 So. 2d 1220, 1225 (Fla. 3d DCA 1980)). This rule extends to agents, employees and officers of corporate parties, so long as that person's allegedly tortious conduct was not "outside the scope of his employment or against the best interests of his corporation." *SIG, Inc. v. AT&T Digital Life, Inc.*, 971 F. Supp. 2d 1178, 1199 (S.D. Fla. 2013) (Rosenbaum, J.) ("an agent of a corporate party to the business relationship cannot be held

liable for tortious interference if he was acting within his capacity and scope as an agent of the corporation").

Locke's argument is well taken. As the alleged "president and CEO" of Seminole Masonry, (ECF No. 41 at ¶ 13), Locke's liability for tortious interference with the Lease Agreement is limited to conduct taken by him "outside the scope of his employment or against the best interests of" Seminole Masonry. *SIG, Inc.*, 971 F. Supp. 2d at 1199. SML claims that Locke acted tortuously by permitting structural alterations to the Subject Property, despite SML's protests otherwise. (ECF No. 41 at ¶ 133; ECF No. 74 at p. 18.) But, at most, this allegation infers that Locke acted against *SML*'s best interests—not those of Seminole Masonry, his employer. And any suggestion that Locke acted outside his authority with Seminole Masonry is implausible, given that SML is *actually suing Seminole Masonry for breach of the Lease Agreement based on Locke's conduct.* (*See* ECF No. 41 at ¶¶ 127(b), (c), (f)); *Cox v. CSX Intermodal, Inc.*, 732 So. 2d 1092, 1099 (Fla. 1st DCA 1999) (noting that "corporate entities" must "act through individuals," and rejecting tortious interference claim against corporate defendant's officer where plaintiff's "breach of contract claims against [defendant] are expressly based on their allegation that [the officer] was acting as a [defendant] employee"). Thus, SML fails to state a claim for tortious interference against Locke.

No factual basis is presented by SML that suggests further amendments could cure these pleading deficiencies, and the Court finds none through its independent review of the record. Accordingly, Count IX is **dismissed with prejudice**.

### C. Seminole Masonry

Seminole Masonry raises two arguments for dismissal: (1) that SLM lacks standing to sue under the APA in Counts I, XIV and XV; and (2) that Count IV, the stand-alone claim for "injunctive relief," is insufficiently pled. (ECF No. 52.)[1]

#### i. SLM's Standing to Sue Under the APA

Through Counts I, XIV and XV, the Counter-Plaintiffs seek damages for breach of the APA, and rescission and reformation of the APA. (ECF No. 41 at pp. 30, 49, 50.) Seminole Masonry moves to dismiss these counts only to the extent they are brought by SLM, arguing that SLM lacks standing to seek relief under the APA as a non-party to that agreement. (ECF No. 52.) In opposition, SLM does not dispute that it is not a signatory to the APA. Instead, SLM argues

---

[1] Seminole Masonry's dismissal arguments directed at the FDUTPA claims (Counts III and X) are moot by Haven's voluntary dismissal of those counts. (ECF No. 59.)

that the APA is an "umbrella" agreement that encapsulates various other ancillary agreements, including the Lease Agreement. And because SLM is a party to the Lease Agreement, it claims to also be an imputed party to the APA with enforcement rights. (ECF No. 60 at pp. 6-8.)

"As a non-party, to sue to enforce the [APA], [SLM] can only establish standing if [it] was an intended third-party beneficiary" of that agreement. *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 981 (11th Cir. 2005). "Florida courts have recognized three types of third party beneficiaries to a contract: (1) donee beneficiaries; (2) creditor beneficiaries; and (3) incidental beneficiaries." *Id.* (quoting *Int'l Erectors, Inc. v. Wilhoit Steel Erectors & Rental Serv.*, 400 F.2d 465, 471 (5th Cir. 1968)). The first two are "intended" beneficiaries with enforceable rights under a contract. *Id.* Mere "incidental beneficiaries," however, have no such rights. *Id.* "The *intent* of the parties is the key to determining whether a third party" is an intended or incidental beneficiary. *Id.*

The parties to the APA clearly intended no third-party rights. Indeed, the APA was drafted "for the sole benefit of the Parties to this Agreement and nothing in this Agreement, express or implied, is intended to or shall confer upon any other Person any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement." (ECF No. 60-1 at p. 48, § 11.12.) And the term "Parties" refers collectively to the signatories of the APA: Seminole Masonry (f.k.a. New Seminole Masonry, LLC), Haven (f.k.a. Seminole Masonry, LLC) and the Hodges. (*Id.* at pp. 1, 49.) SLM is neither a signatory nor "Party" to the APA. (*Id.* at p. 1, 49.) Thus, the intent of the contracting parties is clear: SLM is not an intended beneficiary to the APA and lacks standing pursue remedies under that agreement.

SLM's novel "umbrella" agreement argument is rejected. In its opposition brief, SLM claims that an unpublished opinion of Judge Moore supports its standing to enforce the APA due to SLM being party to the Lease Agreement, an ancillary contract contemplated in the APA. (ECF No. 60 at pp. 6-8 (citing *Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*, 13-cv-20544-KMM, D.E. 160 at pp. 9-11 (S.D. Fla. Jan. 12, 2017).) But the issues in *Architectural Ingenieria* were materially different, as detailed in the earlier Eleventh Circuit opinion in that case upon which Judge Moore based his analysis. *See Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*, 788 F.3d 1329, 1339-41 (11th Cir. 2015). There, the Eleventh Circuit addressed whether amendments or agreements ancillary to an umbrella contract could be enforced against a non-signatory that was also a party to the umbrella contract. Put differently, the issue in that case was whether the defendant was bound by ancillary agreements not executed by it. That is not the question here. Rather, this Court is presented with the inverse: whether a non-party to

an umbrella contract has standing to enforce it. *Architectural Ingenieria* did not decide that issue; thus, the traditional third-party beneficiary analysis governs.

In any event, SLM's argument is contrary to traditional principles of contract interpretation. "Every provision in a contract should be given meaning and effect." *Excelsior Ins. Co. v. Pomona Park Bar & Package Store,* 369 So. 2d 938, 941 (Fla. 1979). In keeping with that principle, the Court must interpret the APA in a way "which gives a reasonable meaning to all provisions" and does not "leave[] a part useless or inexplicable." *Premier Ins. Co. v. Adams*, 632 So. 2d 1054, 1057 (Fla. 5th DCA 1994); *Viridis Corp. v. TCA Global Credit Master Fund, LP*, 721 F. App'x 865, 872 (11th Cir. 2018) (same). Finding SLM has standing to enforce the APA would render meaningless section 11.12 and its limitation of enforcement rights to "Parties to th[at] Agreement." (ECF No. 60-1 at p. 48, § 11.12.) The Court declines to do so.

Accordingly, Counts I, XIV and XV are **dismissed without prejudice** to the extent that those claims are brought by SLM. *See Brown v. Gadsen Regional Med. Center, LLC*, 748 F. App'x 930, 933 (11th Cir. 2018) ("Because Plaintiffs had no legally protected interest in the Provider Agreement, Plaintiffs lacked standing to pursue a claim based on an alleged breach of that contract," and affirming dismissal without prejudice for lack of subject matter jurisdiction); *DiMaio*, 520 F.3d at 1303.

### ii. Injunctive Relief

Seminole Masonry seeks dismissal of Count IV, a claim for "Injunctive Relief," arguing that an injunction is a remedy not a stand-alone cause of action. (ECF No. 52 at pp. 16-17.) The Counter-Plaintiffs defend this form of pleading, arguing that Count IV is an alternate remedy for other legal and equitable claims asserted by it. (ECF No. 60 at p. 9.)

"Any motion or suit for either a preliminary or permanent injunction must be based upon a cause of action . . . . There is no such thing as a suit for a traditional injunction in the abstract. For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim)." *Alabama v. United States Army Corps of Engineers*, 424 F.3d 1117, 1127 (11th Cir. 2005) (citing *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004)); *Fastway Moving & Storage, Inc. v. Ugarte*, No. 13-60832, 2013 WL 3927687, at *2 (S.D. Fla. Jul7 29, 2013) (Moreno, J.) (same). "An injunction is a 'remedy potentially available only after a plaintiff can make a showing that some independent legal right is being infringed—if the plaintiff's rights have not been violated, he is not entitled to any relief, injunctive or otherwise.'" *Alabama*, 424 F.3d at 1127 (quoting *Klay*, 376 F.3d at 1098).

Count IV is insufficiently pled, as there are no allegations of an infringed upon "independent legal right" that could serve as a basis for the injunctive relief sought. *Id.* Generally alleging Seminole Masonry's "egregious" "acts identified in Counts I-III" does not satisfy this pleading requirement. (ECF No. 41 at ¶ 96.) Thus, Count IV is **dismissed without prejudice.**

## 5. Conclusion

In sum, the Court **grants** the Counter-Defendant's motions to dismiss (**ECF Nos. 52, 68, 69**), as follows:

- Counts V and IX are **dismissed with prejudice**.

- Count XIV is **dismissed with prejudice** only to the extent asserted against Quantum Ventures of Michigan, LLC and Quantum Construction, LLC.

- Count XV is **dismissed without prejudice** only to the extent asserted against Quantum Ventures of Michigan, LLC and Quantum Construction, LLC.

- Counts I, XIV and XV are **dismissed without prejudice** to the extent they are asserted by Seminole Land Management LLC.

- Count IV is **dismissed without prejudice**.

**Done and ordered**, in Chambers, at Miami, Florida on February 19, 2019.

_____
Robert N. Scola, Jr.
United States District Judge